IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PALECIA LAMBERT-NEWSOME, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 11-1141-CJP |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Palecia Lambert-Newsome is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her Supplemental Security Income (SSI) Benefits.[1]

**Procedural History**

Ms. Lambert-Newsome applied for benefits in August, 2009, alleging disability beginning on May 10, 2000. (Tr. 169). The application was denied initially and on reconsideration. After holding a hearing, ALJ Paul F. Kelly denied the application for benefits in a decision dated August 16, 2011. (Tr. 9-16). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

**Issues Raised by Plaintiff**

Plaintiff argues that the ALJ erred in evaluating the opinion of Dr. Riaz Naseer, a neurologist who performed a consultative examination of plaintiff.

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 12.

**Applicable Legal Standards**

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** However, limitations arising from alcoholism or drug use are excluded from consideration of whether a claimant is disabled. **42 U.S.C. §423(d)(2)(C); 20 C.F.R. §404.1535.**

"Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity

---

[2]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

(RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

**Weatherbee v. Astrue, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Ms. Lambert-Newsome is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing **Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995)**).

This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384,**

**1390 (7th Cir. 1997)**.  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  **See,** *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Kelly followed the five-step analytical framework described above. He determined that Ms. Lambert-Newsome had not been engaged in substantial gainful activity since the alleged onset date, and that she had severe impairments of obesity, diabetes, diabetic neuropathy, carpal tunnel syndrome, hypertension and degenerative joint disease.  He determined that plaintiff's impairments do not meet or equal a listed impairment.

Plaintiff was examined by Drs. Adrian Feinerman and Vittal Chapa before the evidentiary hearing.  The ALJ gave significant weight to their opinions.  She was also examined by Dr. Naseer, but his report was submitted after the hearing.  The ALJ gave his opinion "great weight, with the exception of his determination that the claimant is limited in the use of her hands." (Tr. 14).  The ALJ also gave great weight to the testimony of Dr. Fred Fishman, who reviewed the medical records and testified at the hearing.

The ALJ found that Ms. Lambert-Newsome had the residual functional capacity to perform a limited range of work at the sedentary exertional level.  He found that she is able to reach, handle, finger and feel on a frequent basis.  Based on evidence from a vocational expert, the ALJ found that plaintiff did not have the capacity to perform her past relevant work as a human resources training officer in a bank.  However, she could do jobs such as circuit board assembler, medical supply packager and optical goods assembler.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the point raised by

plaintiff.

**1.    Agency Forms**

Ms. Lambert-Newsome was born in December 1972, and was 29 years old when she allegedly became disabled.  (Tr. 195).

In a Disability Report, plaintiff said she was unable to work because of bilateral carpal tunnel and reflex sympathetic dystrophy.  She said that she had become unable to work in May, 2000, and had not worked thereafter.  (Tr. 199).

Plaintiff had worked as a customer service representative for a bank and as a human resources clerk.  (Tr. 200).  She completed 3 years of college.  (Tr. 204).

Earnings records show that plaintiff had income of $8,404.18 in 2002 and $1,171.50 in 2003.  She had no income from 2004 through 2011.  (Tr. 184).

**2.    Evidentiary Hearing on June 28, 2011**

Plaintiff was represented by an attorney at the hearing.  (Tr. 23).

Dr. Fred Fishman testified as an independent medical expert.  He reviewed the medical records, but did not examine plaintiff.  He testified that she had high blood pressure, diabetes and joint pain of undetermined etiology.  She had a history of carpal tunnel repair.  She had a "very high BMI."  (Tr. 27-29).  He agreed with the conclusions reached by Dr. Feinerman in his consultative examination, and agreed with the state agency consultant's RFC assessment except he would limit her to occasional, rather than frequent, postural activities due to her obesity.  He said that a positive Tinel's sign is a clinical sign of carpal tunnel syndrome, but the diagnosis can only be made by EMG testing.  With regard to manipulative limitations, he testified "there's nothing here."  (Tr. 31-34).

Ms. Lambert-Newsome testified that she was 39 years old.  (Tr. 37).  She said she stopped working in May of 2000.  (Tr. 39).  She worked at a Bank of America call center in

Dallas, Texas. (Tr. 40). She stopped working due to symptoms from bilateral carpal tunnel syndrome. She had carpal tunnel release surgery in 2000 and 2001. (Tr. 40-41). She did not return to work because her doctor would not release her to do any type of work that involved using her hands. (Tr. 42-43). She did not have "normal use" of her hands after the surgery. (Tr. 43).

Her family doctor, Dr. Reinert, told her she had sciatica. She had pain in her back and leg. (Tr. 45). She was taking Meloxicam for sciatica.[3] (Tr. 46). The medication did not relieve her back pain. She said she had stabbing pains going down her arms into her hands. (Tr. 47). Her medications made her sleepy during the day. (Tr. 51-52).

She had 3 children at home at the time of the hearing. They were 18, 14 and 7. (Tr. 49).

A vocational expert (VE) testified that, if she were able to do sedentary work limited to standing 2 hours today a day and sitting for 6 hours, with occasional push/pull, occasional postural activities, frequent reaching, handling, fingering and feeling, no environmental hazards, no hazardous machinery and normal production rate, she could not do her past work. She could, however, do other jobs such as circuit board assembler, medical supplies packager and optical goods assembler. (Tr. 59-62). If she were limited to occasional, rather than frequent, use of her hands, there would be no work that she could do. The VE testified that unskilled sedentary labor requires good use of both hands and fingers. (Tr. 62-63).

3. **Medical Treatment**

The earliest medical record is dated May 11, 2005. This was plaintiff's first visit with family doctor Dr. Reinert. She was 64.5" tall and weighed 334 pounds. She had no particular complaints except for some fatigue and scaling suggestive of ring worm on her left upper arm.

---

[3] Meloxicam is a non-steroidal anti-inflammatory drug used to treat osteoarthritis and rheumatoid arthritis. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000173, accessed on July 12, 2012.

Physical exam was normal except for elevated blood pressure and obesity. (Tr. 323-324). In April, 2007, Dr. Reinert again recorded an essentially normal physical exam. She had no tenderness in her back. Sensation was normal in her upper extremities. Deep tendon reflexes were normal. (Tr. 302-321). In April, 2009, she was seen for newly diagnosed high blood pressure and was started on medication. Her weight was "350+." (Tr. 310-311).

Plaintiff went to the emergency room in August, 2009, complaining of radicular pain in her left thigh and left knee pain. An x-ray showed osteoarthritis in the left knee. An x-ray of the lumbar spine showed small mild degenerative changes at L3-4 and L4-5. (Tr. 270-282).

Dr. Reinert saw plaintiff for low back pain in September, 2009. After examining her, Dr. Reinert advised that "there was no hint of a dangerous problem and that rapid recovery [was] expected." (Tr. 308).

In October, 2009, plaintiff reported to Dr. Reinert that she had an episode where she felt like she passed out. She admitted that she had never taken her blood pressure medication. She weighed 380 pounds. (Tr. 304-305).

In April, 2010, plaintiff saw Dr. Reinert for allergic rhinitis. She was noted to have "prediabetes." (Tr. 302-303). In May, 2010, Dr. Reinert noted that she had recently been diagnosed with diabetes. Under "symptoms," Dr. Reinert noted paresthesia in her hands. However, he also noted that, on neurologic exam, her sensory, motor and reflex findings were normal. (Tr. 299-300). In July, 2010, she again complained of paresthesia in her hands, but Dr. Reinert noted that, on examination, her sensory, motor and reflex findings were normal. (Tr. 296-297).

**4.    Consultative Examinations**

Dr. Adrian Feinerman performed a consultative physical examination on November 3, 2009. (Tr. 252-260). Plaintiff told him that she had pain in her hands for the last 7 years. She

said she had bilateral carpal tunnel release, but continued to have a lot of pain in her arms and hands. However, she also reported that she was able to "perform fine and gross manipulation normally." (Tr. 253). On physical exam, Dr. Feinerman found no anatomic abnormality of any extremity, and no redness, warmth, thickening or effusion of any joint. Her grip strength was strong and equal bilaterally. Fine and gross manipulations were normal, including opposition of fingers and thumb. Deep tendon reflexes were normal. She was able to lift, carry and handle objects "without difficulty." (Tr. 257). Dr. Feinerman prepared a chart showing her ability to do various activities with her hands. See, Tr. 258. She had no difficulty in doing any of the functions listed.

Dr. Vittal Chapa performed a consultative physical examination on May 22, 2010. (Tr. 285-290). Plaintiff told Dr. Chapa that she had pain in both hands and could not use her hands for extended periods of time. She said that activities such as brushing her teeth, doing her hair, showering and ironing clothes cause pain in her hands. On examination, her weight was 411 pounds. Knee and upper extremity reflexes were absent. Tinel's sign was negative at both wrists. Her hand grip was full and equal bilaterally. She was able to "perform both fine and gross manipulations with both hands." (Tr. 287).

On June 18, 2011, Dr. Riaz Naseer, a neurologist, performed a consultative examination. His narrative report is at Tr. 349-351. Plaintiff told him that she had pain in her hands and arms, and her hands were always numb. On examination, her weight was 397 pounds. Her neurological exam showed that she had normal strength and tone in her upper and lower extremities, but deep tendon reflexes were completely absent at the biceps, triceps, knees and ankles. She had decreased sensation distally in both lower extremities and at the fingers. Tinel's sign was negative at the wrists and elbows. Dr. Naseer's impression was non-insulin dependent diabetes, most likely diabetic neuropathy superimposed over carpal tunnel syndrome,

hypertension and sciatica.

 Dr. Naseer also completed a Residual Functional Capacity (RFC) assessment. (Tr. 352-357). The form defines "occasionally" as "very little to one-third of the time." (Tr. 352). Relevant to her hands, Dr. Naseer opined that she could "occasionally" do activities such as handling and fingering. The form asked him to identify the medical or clinical findings which support that limitation, but he did not respond. (Tr. 354). Dr. Naseer completed a chart indicating that plaintiff had full range of motion of the shoulders, elbows, wrists and hands, and had full and equal grip strength and upper extremity strength. (Tr. 359).

## Analysis

 Plaintiff takes issue with the ALJ's rejection of Dr. Naseer's opinion that she is limited to occasional, rather than frequent, use of her hands. The ALJ said that he rejected that part of Dr. Naseer's assessment for three reasons: it was not supported by any testing; it was predicated on Ms. Lambert-Newsome's subjective complaints; and it was inconsistent with the findings of Drs. Feinerman and Chapa. See, Tr. 14.

 The agency defines occasional as "occurring from very little up to one-third of the time." Frequent is defined as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, *5-6.

 As plaintiff correctly notes, an ALJ may not simply ignore evidence that does not support his conclusion. ***Indoranto v. Barnhart***, 374 F.3d 470, 474 (7th Cir. 2004). While he is not required to discuss every piece of evidence, the ALJ must build a "logical bridge" from the evidence to his conclusion. ***Vilano v. Astrue,*** **556 F.3d 558, 562 (7th Cir. 2009), and cases cited therein.** Because that is precisely what the ALJ did here, plaintiff's arguments fail.

 Plaintiff argues that Dr. Naseer's limitations were, in fact, supported by testing which showed that she had absent deep tendon reflexes. It is true that both Drs. Chapa and Naseer

9

found absent deep tendon reflexes.  However, there is no medical evidence that absent reflexes result in a limited ability to use the hands.  Rather, the medical evidence suggests otherwise.  Dr. Chapa found absent reflexes, but also reported that plaintiff had full grip strength and was able to "perform both fine and gross manipulations with both hands."  (Tr. 287).  Dr. Fishman testified, based on review of the medical evidence, including Dr. Chapa's report, that she did not have any manipulative limitations.

It is sheer speculation to argue that the lack of deep tendon reflexes supports Dr. Naseer's limitations.  The ALJ cannot base his decision on speculation as to the meaning of the medical evidence.  *Myles v. Astrue*, **582 F.3d 672, 677-678 (7th Cir. 2009)**.

Plaintiff also argues that Dr. Naseer's limitation is supported by Dr. Reinert's notations of paresthesia in the hands on two visits, and that the ALJ ignored this evidence.  It is true that the ALJ did not mention Dr. Reinert's notes.  However, this fact is of little significance because Dr. Reinert noted only that plaintiff made subjective complaints of paresthesia in her hands.  These subjective complaints were not confirmed by Dr. Reinert's examination.  Rather, on both visits, Dr. Reinert recorded that sensory, motor and reflex findings were normal.  (Tr. 296-297, 299-300).

According to plaintiff, the ALJ's decision was "patently inconsistent" because he said he gave Dr. Naseer's opinion great weight, but his RFC assessment does not perfectly track Dr. Naseer's assessment.  In addition to limiting her to frequent, rather than occasional, use of her hands, the ALJ said that plaintiff could sit for a total of 6 hours and stand/walk for a total of 2 hours.  Dr. Naseer said that she could sit for a total of 4 hours, walk for 2 hours and stand for 2 hours.  The short answer to this argument is that the fact that he gave "great weight" to Dr. Naseer's opinion does not mean that he was required to adopt it wholesale.  The issue of RFC is reserved to the Commissioner; while the assessment of RFC must be based on evidence in the

record, "the final responsibility for deciding these issues is reserved to the Commissioner."  20 C.F.R. §404.1527(e).  Further, it is difficult to see how plaintiff was prejudiced by the fact that the ALJ assessed her with *less* ability to stand/walk than Dr. Naseer did.

Lastly, plaintiff argues that the ALJ should have given controlling weight to Dr. Naseer's opinion.  See, Doc. 16, pp. 5- 7.  Dr. Naseer was a consultative examiner, and not a treating doctor, so his opinion was not entitled to "controlling weight" under §404.1527(d)(2).  **Simila v. Astrue**, **573 F.3d 503, 514 (7th Cir. 2009).**  The ALJ was required to evaluate Dr. Naseer's opinion by considering how well Dr. Naseer "supported and explained his decision, whether his decision is consistent with the record," his specialty, and "any other factors of which the ALJ is aware."  **Simila, 573 F.3d at 515, citing 20 C.F.R. §303.1527(d)**.

ALJ Kelly properly evaluated the medical opinions.  As plaintiff's own discussion reveals, weighing the regulatory factors does not indicate that Dr. Naseer's opinions outweigh those of the other doctors.  Dr. Reinert was a treater, and Drs. Feinerman, Chapa and Naseer each saw her once for a consultative examination.  As the ALJ saw it, Dr. Naseer's opinion was not supported by medical signs or laboratory findings, and it was inconsistent with the other medical opinions.  The only factor that cuts in favor of Dr. Naseer's opinion is that he is the only neurologist, but that one factor does not outweigh all the others.  A specialist's opinion is "*generally* entitled to more weight; it is not presumptively so (unlike treating physicians)."  **Simila, 573 F.3d at 516. (emphasis in original)**.

In short, it was the ALJ's province to weigh the evidence and to resolve conflicts, which he did.  After a proper analysis, he explained the reasons for the weight he gave to the competing medical opinions, including that of Dr. Naseer.  He fulfilled his duty to build a logical bridge from the evidence to his conclusion, and his decision is supported by substantial evidence.  Therefore, it must be affirmed.

**Conclusion**

After careful consideration, this Court is convinced that the decision of the ALJ is supported by substantial evidence in the record as a whole, and that no errors of law were made. Therefore, the final decision of the Commissioner of Social Security, denying Palecia Lambert-Newsome's application for SSI, is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:  July 17, 2012.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**United States Magistrate Judge**